Good morning. Good morning. May it please the Court, Alison Turner for Appellant Eric Gonzalez and for the cross appellees. Since there is a cross appeal here, would the Court prefer I address issues raised by both the appeal and cross appeal in this round? Well, that would mean that both of you have some rebuttal time. So that being said, you know, I think it's since I think we have the obviously all of the judges here have a sense of what's going on here. I'm not going to, you know, for your preference, I think just argue it most logically and tell me how much time you want to save on rebuttal. All right. I think I'll probably address both points briefly. Probably makes sense. And then so how long would you like to reserve for rebuttal? Seven minutes. Okay. Thank you. Addressing the default judgment first, we've laid out in the brief that the discretion of the district court in such a situation is limited by various policy due process points, principles. For example, default is reserved for extreme cases. The benefit of the doubt goes to the party against whom default was entered. 60B relief is granted liberally. I think none of those factors were at work in this case and that it should be reversed. First of all, the court, the district court decided the case under its inherent powers. And so it had to find Mr. Gonzales personally culpable. It had to find that he engaged in bad faith conduct. Well, should the court have done that or should the court have looked at the fault factors? Well, that's one of the fault factors, the culpability. And I think it's something more than that. If you look at the fault factors, you have to look at all of them. You can't just look at one. Correct. But I think the district court erred right off the bat, strongly finding bad faith conduct on the basis of no evidence. So I'm a little confused and maybe I've just missed this in the papers. The court seems to have relied at least in part on a representation from Mr. Day. But there doesn't seem to have been any further affidavit or anything submitted by Mr. Day saying I made a mistake or something like that. Did I miss that? No, there was, it got very messed up on the question of did Mr. Gonzales know he was being summoned back to the court? And the problem there was a failure of memory on both the lead counsel, Mr. Bex, and plaintiff's counsel, by the way, who thought it was Mr. Bex speaking. The record didn't come in until after the declarations had all been filed and it turned out it was Mr. Day who had been speaking. But he spoke on behalf of the team, so to speak, who was representing Mr. Gonzales. Well, he sort of threw him under the bus. He did, yes. And do we have a recantation from Mr. Day? No, we don't. But I think if we examine very closely what he said, assuming that, you know, he is speaking for what happened, there is absolutely no way he could have personal knowledge that his messages to the Dominican Republic, where Mr. Gonzales was, to the phone, were picked up. He could know he left the messages, but he couldn't know that they were picked up. And he essentially said they were picked up and then sort of corrected and said, well, we believe they were picked up. And it turned out he was just guessing. And in fact, we do have Mr. Gonzales's statement that he didn't pick them up because there was no phone service there. And this is where that principle, with respect to default judgment, benefit of the doubt. There is no evidence, but at least the benefit of the doubt should go to Mr. Gonzales. Is Mr. Day, why wasn't something presented from Mr. Day, saying I misspoke, I had no basis? He was Mr. Gonzales's lawyer at the time of the district court was making its determination. Yes? The lead counsel was Mr. Bass. I understand that, but the representations that the district court relied on, at least in part, were these very explicit and damning representations from Mr. Day. Why wasn't there something from Mr. Day? Because he didn't find out about it until the court came down with this order and the proceeding was over. I'm sorry, who did? Because the record, Mr. Day, because the record, there was no record yet when they were asking the court to not enter a default and then to lift a default. And it was when, in the court's order itself, the court said, I'm not going to believe anything here because it wasn't Mr. Day speaking, it was Mr. Beck. I mean, it wasn't Mr. Beck speaking who gave the declaration, it was Mr. Day. And by that time, it was over. So I'm assuming that's why he didn't do anything at that point. I guess, I guess from my point of view, I'm wondering, I've stood in your place a whole lot in my life. And as the lawyer, I'm the representative for the client. What I know, the client knows. I'm having a tough time understanding why when the lawyer knows something and the lawyer knows that the client is to be there, the lawyer knows that's what the situation is, that the client can come out, come in and say, well, my lawyer is a bad agent. Because the only way you get off here is my lawyer is a bad agent. They didn't get a hold of me. They let me do things I shouldn't do, which is, I mean, I'm having a tough time with that. I understand that. And I understand the general principle that the attorney's conduct is attributable to the client. So I mean, the client can sue the attorney for not doing what they ought to do. That may be between them. But I'm having a tough time with, well, Judge, I let my client go someplace and now I can't contact them and they don't answer their phone. But that's okay because I let them go. I think that in another context, the Ninth Circuit has addressed this in a case called Gibbs that we cite in our brief, albeit in a footnote. But that was a habeas case. And it was a case in which the lawyer failed to communicate to his client that the Supreme Court had ruled on his appeal and denied it. And so time was running on his habeas petition. And he got to tell him that the Supreme Court had ruled the client missed the deadline. And the court there said, if you fail to communicate some key part of the case to your client, it's not fair to attribute what you know to the client. Well, there's a whole different set of laws that apply in a habeas context. And when you can bring the motion to get out, when you're abandoned, and when you're not, we're not there. We're at a trial. Well, I think there was an abandonment here in that sense, especially on the failure to return, where the lawyers made sure that it was known that they had left messages, but then said before correcting that they were just briefed. I'm even kind of wondering about the conflicting representation from the standpoint that if Mr. Gonzales or Officer Gonzales, the officers that were involved in the actual physical contact were found to have qualified immunity, right? One was. Three were found not liable for excessive force. Okay, so the officers that are involved in the incident, Mr. Gonzales wasn't there, right? Right. So, and he's a supervisor. Right. So he is now responsible for conduct that those officers don't have any liability for. Is that right? Correct. One officer was found to have engaged in excessive force, but was found qualified. But was found that had qualified immunity. Right. So essentially, the plaintiff, or in this case the appellee on that, got nothing, right? Right. But Mr. Gonzales is responsible for everything and attorney's fees besides, right? Correct. So does the county have to pay for that? It's not punitive damages, but likely it's in the course and scope. But was there any offer of proof made as to, he wasn't deposed by the other side either, was he? This is what makes this so draconian. He wasn't deposed. And they didn't have to make- What was the theory of liability? What was the theory of liability? Supervisor liability, that he either wasn't directly involved or he caused the excessive force in some manner. They never got beyond the elements of the supervisor liability claim. No evidence. They were never made to make an offer of proof. This was a true windfall, as this court has characterized a default judgment in favor of plaintiffs, because the plaintiff lost against everybody, including the county. The evidence it did have and show didn't carry the day for them. Okay. Well, that being said, why then, if his lawyer made these wrong representations, I think it's probably clear that the judge was, after all this time was spent and they're ready to move to the second phase, is irritated, feels that we're not going on to the second stage, right? Correct. So the lawyer is, in fact, the judge is irritated with the lawyers as well, if the lawyer that, so why, I think my colleagues are saying, well, then why didn't someone, if that was really the truth, why didn't they do, why didn't, you know, why didn't the lawyer fall on his sword and say, hey, look, I said that, but I, you know, I really wasn't being accurate with the court. Well, Mr. Beck said it in a declaration, only the problem was it wasn't he that was speaking, which- No, that's what I don't understand.  The, in fact- He misremembered. It seems at that point there was perhaps a irreconcilable conflict between Mr. Gonzalez and his lawyers. It was not a good situation. That's true. Let me change the circumstance just a little bit. You had a default judgment entered. Correct. The default was entered. Why? It was entered on the basis of Mr. Gonzalez's alleged bad faith. So was it a sanction? It was a sanction under inherent powers, I guess, in that respect. Because Gonzalez didn't default, right? I mean, he had an answer filed, right? Well, his lawyer forgot to file an answer. Mr. Gonzalez fell through the cracks in this case. He didn't file an answer, but his lawyer nonetheless appeared. Correct. Nobody moved for a default on that. No. So the best we can say is this is a sanction for Gonzalez not being there? For not coming back to, for being there in Phase 2 of the trial. He was there in Phase 1, right? He was there, and that's the thing. I mean, how can you infer an intent to abuse a litigation process when he was actually present two days when he'd been asked to be there, when they played the video of his interview of Mr. Figueroa? And he was available two other days. Then his lawyer, he says, I want to get engaged in the Dominican Republic. His lawyer says go. I mean, he relied on his lawyer. That was a big mistake. But it wasn't a mistake intended to abuse the litigation process. If I could go further. So now we get down to a sanction. Was it a sanction for contempt? The court never said that. So what kind of a sanction is it? It's a sanction for not showing up. Well, what is that? Is it contempt? Because there are many defendants who go to trial and don't show. Correct. I've represented a lot of them in my life. Truck drivers who drive trucks and don't come back to the trial because we can't find them. So I'm representing the company without the driver, and I'm going against the other party. You don't take default, and if it's a sanction for contempt for not showing because you're a party, there's absolutely no rule for it. Correct. So that's why I'm trying to get from your mouth, why is it contempt if it is? I don't think it is. Is it a discovery sanction? It is not a discovery. The court was of the mind that he had to be there because he was a party. I understand. But then, in effect, it seems to me what you're saying to us is there's no authority for establishing contempt for failing to appear as a party. I think that's correct. Well, I didn't get that in any of the briefs, and I'm going to ask your counsel the opposite about that too. I don't know what this was for. The district court was very angry. Yeah, the court was angry, but you can't give sanctions for being angry. Correct. Maybe my fellow judge over here on the district court can tell me. You can, but you won't necessarily be affirmed. I was on the district court before many times, and I got really disgusted. But contempt, you've got to have something to be contemptuous about. And the district court was determined from the outset that it was going to be a default judgment. I mean, she made that clear, and that was another due process problem because she wasn't. Well, okay, if he wasn't there, there are also two. You could go ahead with the trial, and you could advise the jury that this person isn't here and draw negative inferences. And he wasn't even listed on the list of witnesses, if I recall correctly. He was listed. Oh, he was? His attorney thought he was. I see. I mean, it was. I mean, all of this points to the attorney having screwed up. Kind of does. So for which the appropriate sanction would have been, if there were sanctions permissible, to sanction the attorney. I think that's correct. Who wasn't there when the court made this ruling, right? Or was Mr. Day there when the court did this? I don't know who was present. Well, you said Mr. Beck had been. I think the court didn't have a hearing. I think the court decided on the papers. I think there was an argument over the default judgment, and I think it was decided on the papers. I agree on that. Yeah. Okay, it's gone over, all right, already. I'll give you some time for rebuttal. I'm not going to tell you how much right now. I want to hear what we'll see how long we take with the other side, but you'll have some time to say something again. Thank you. Good morning. Good morning, Anna. Will you be the only one arguing, or are you splitting the time, or how is that working? We split the time. I will reserve seven minutes for rebuttal. Okay, but who else is going to talk? Gary Kesselman. Okay, but you have 15 minutes total, so how are you going to split that? I will use eight minutes, and he will use seven minutes. So no rebuttal. I will use five minutes. He can use five minutes and reserve five minutes. All right. You want to rebut the argument we just talked about? Is that what you're saving your rebuttal for? Because you don't have any rebuttal for the argument you're making about a qualified immunity. There's a cross appeal, though. On qualified? Well, not on that, but you've got cross appeals, right? So each side has some type of rebuttal, and they're sort of the arguments. She asked that question, so I said they can talk on rebuttal, what they want to talk about. All right. But you only have 15 minutes total, basically, unless I give her some extra time. So you're going to talk five, he's going to talk five, and then you're going to jointly reserve five for rebuttal. Is that right? That is correct, yes. Okay. So I will tell you, seated at council table, sometimes people at the podium go crazy, and then you're thinking they're taking up all your time. So please be respectful of that, but I may remind you of that. I will give you five minutes, okay? If we take longer with him on the questions, I'll give you five minutes, so you don't need to rush to the podium and pull him off. All right? All right. So state your name, and we'll start the time. Hello. That would be interesting. Oh, no, it's just audio. Well, no, we do have video streaming, I guess, so no. All right, so don't do it. Thank you. I'm Samuel Obogu, representing the respondents in this case, as well as the cross-appellant. One of the issues in this case, and which was the main focus in the last few minutes, was the issue of why the court granted the default judgment against Sergeant Gonzalez. The reason for that is, number one, the parties had an on-call agreement, whereby the county and council for Gonzalez agreed to produce him as a witness for the plaintiffs. Secondly, Gonzalez was listed as a witness both in the phase one and phase two of this bifurcated trial. The bifurcation phase two is for trial on the supervisory liability. But all the indication is that Officer Gonzalez, who was there for the first phase, then mistakenly believes, maybe because all the first phase defendants were found not liable, mistakenly believes he's free to go and does so with the least acquiescence, if not explicit permission, of his counsel. Then he's in a place where, according to him, he doesn't have cell phone access. His attorneys, instead of telling that to the judge, make up all this stuff about, oh, he's turning off his phone, he's acting wrongful, but the person who's making that representation, Mr. Day, never puts in any evidence contradicting Gonzalez's affidavit that that wasn't true. So the problem was not Mr. Gonzalez at all. Mr. Gonzalez wasn't doing anything that he didn't think he had full permission to do, right? We believe that Mr. Gonzalez, in fact, did something wrong. What? Number one, Gonzalez, inconsistent with the representation that he was in court all through, was not seen in court at any time. Counsel for Gonzalez represented he was there for four straight days. But the record shows that on the 29th and on the 31st, he was not in court when the plaintiffs requested to call him as a witness. Well, but he probably couldn't sit in the courtroom because if there was a motion to exclude witnesses, you can't sit in the courtroom if you're going to be called as a witness. Well, he's a party. But he could be available. You could be sitting outside somewhere. You wouldn't know about that, right? Except that the court specifically asked on the 31st if Gonzalez was present, and Mr. Beck said no. And also we specifically requested Gonzalez to be present on the 29th to be called as a witness. We were told he was not there. Okay, so what if I believe you? What did the judge do? The judge entered a default. For what? Well, the reason the court entered a default was, one, that there was an on-call agreement requesting Gonzalez to be called as a party for the plaintiffs. I understand about that. So what? Well, the reason is that the evidence that was requested of Gonzalez is information that only Gonzalez would know. So what? Well, it would prejudice the plaintiffs from proving their case. So what? So that means that the court was going to be called as a witness. What did the court give the sanction for? It gave the sanctions because of Gonzalez's failure to make himself known. Well, I understand your reasoning. But what is the procedural method by which the court could give such sanction? By striking the answer. I understand. Enter the default. For what? Is it contempt? No, it's not sanction. What is it? It is based on Gonzalez's culpability. Now, just a minute. That's not enough. You've either got to say he is contemptuous because he did not appear, because he wouldn't give his testimony that he was supposed to give, and therefore it's contempt. Or you've got to say there's a discovery violation. Or you've got to go someplace. You just can't enter an order. You've got to have a basis in the rules. What rule did he follow? She. She said. What rule did she follow? The court's inherent jurisdiction to keep orderly its process and to allow for the efficient administration of justice. So in your view, she does not need to follow the federal rules of civil procedure in a trial. She can just go outside of the federal rules and enter this order. Because if it were contempt, she had to have a hearing. She had to say, okay, you are in contempt. I'll give you, for every day you're not here, I'm going to make you pay the attorney fee of the other side. For every day you're not here, I'm going to do this. I'm going to do that. That's civil contempt. If it's criminal contempt, she had to have a hearing. There was no hearing. There was nothing. Well, there was, because if you recall, this was in the middle of the second phase of the trial. What? Because the judge ordered the parties, I mean the defendant, to contact Gonzalez and have him appear for trial. What case says that you can enter a default for failure to appear on a subpoena? It was not just based on a subpoena, Your Honor. It was, because the subpoena, the agreement was that they didn't need subpoenas. They had to appear anyway. And if they didn't appear, you're saying that was a problem. What case says that you get a default for failure to appear for a subpoena? What case says that? I don't have any case on the top of my head. Well, I've got a few cases that say a court cannot, consistent with the requirements of due process, strike a defendant's answer and enter a default as punishment for contempt. And that's exactly what happened here. Your Honor, in this case, what, again, was primary to the court's consideration was that, one, that the plaintiffs requested the presence of Gonzalez as a witness in their own case because Gonzalez was the one most knowledgeable regarding his supervision. But if he was knowledgeable, you never even deposed him. There was no offer of proof. All of the officers, this was kind of a situation that exploded in the anteroom of the sheriff's office, right? And all of those officers are found not responsible. And then you never deposed him. And you never made an offer of proof of how he could be responsible for something that just came up, and he's not even there. We did not depose him because the prior attorney who was in the case did not depose him. But when we came into the case, we set it up. But there is no offer of proof of how he could be responsible for officers' excessive force that just explodes, you know. There was, because in the pretrial order, we stated the fact of what he failed to do, which is consistent with what Perez, who was convicted, I mean, who was found liable for excessive force, the jury determined his use of excessive force. But they found that the officer couldn't have known. It wasn't reasonably, you know, he got qualified immunity. So essentially, you know, what it looks like to me, the judge is really angry with the lawyers, is really angry that this guy isn't here. And maybe the judge didn't like how the jury came out. And so someone that so then comes up with a default judgment of the full amount against someone, and then knowing that the county is going to have to pay it, and then that makes the time worthwhile. That wasn't the final. The court explained its reasoning, number one. Well, I know, but it's hard not to look at it that way. And you were just saying a minute ago that you thought the real failure was his failure to make himself available as a witness. Yes. So how can you have a default judgment in his role as a party, as a sanction for his failure to appear as a witness? If a witness doesn't appear, then you, as Judge Smith points, you can charge him with contempt and hold a hearing and so forth. But how can you possibly enter a default judgment against him as a party on the basis of his failure to appear as a witness, which is what you say is the fault? Because based on the testimony of the people he was supervising, they testified in the case that they were not being supervised, that they do what they like. No, no, no. I'm asking what's the – it's really a variation on Judge Smith's point. What case anywhere says that if a witness fails to appear, you can – and if the witness happens also to be a party, you can impose default judgment on that party? Well, as far as the case law is concerned, other than what is cited in our briefs, I don't believe I have any other case law on it. However, there's a case of – If you've got the case in your briefs, tell us what it is. Otherwise, I've got one more question. You said inherent power. Right. Go outside the rules. Just do inherent power. What do you do with Halako Engineering v. Costal? Halako Engineering v. Costal says, before dismissing a case under inherent power, a court must consider less drastic sanctions, and the most serious criterion for the imposition of default is the misconduct penalized must be related to the matters in controversy. Was there any consideration of less serious? There is, and the court considered those factors. And the court, not only the fork factors, the ITIL factors, the court answered that precise question in indicating that – I saw what the court did. My worry is that I don't know where the court got that information, because she was using the discovery sanctions. It was not discovery sanctions. I know. That's why I wondered how she got those factors. Well, the court precisely said that no other sanction at this point would have been effective because the plaintiffs – Gonzalez – Sergeant Gonzalez was the only one with the information regarding his direct supervision of these deputies who have been found to be using excessive force, who have admittedly did things in violation of their training and protocols, who testified that they never at any point were reprimanded for what they did or what they've done before, and that Gonzalez was the only one who could give that testimony. And the plaintiffs in their pretrial order specifically indicated that they would rely on the testimony of Gonzalez in trying to prove this point. All right. Is your question answered? Okay. You've gone over your time, so I'm going to give you five minutes, which means that you guys don't have any rebuttal either, but I'll give each of you a couple of minutes for rebuttal after the whole thing. Thank you. May it please the Court, I'm Gary Castleman. I represent Mr. Figueroa. We represent Mr. Figueroa, and I'm here with respect to the cross-appeal as to the qualified immunity finding. I understand the Court has read all the briefs, so I'm not going to hammer on those things, but on a very important point, I think, is that the defendants took an all-or-nothing approach to this case. They attempted to defeat liability, and with the exception of the finding of excessive force against Perez, who acknowledged that he was the one that was hands-on but denied causing the injury, denied really declined to provide any explanation how he could have been mistaken in the use of the force that he did. And we're not talking about the hazy border between what's permissible and what's not permissible as cited in, I believe, Anderson v. Creighton and echoed in the Saucier case. We're talking about a man whose arm was fractured between the shoulder and the elbow. Just a minute. Get to your point because you won that part. You won the constitutional violation. Yes. So get to your point. My point is that there was an affirmative defense alleged by Perez that he was entitled to qualified immunity. But you were fine with that going to the jury because that's generally favorable. Most plaintiffs' counsel would rather have that. But you lost. They found qualified immunity. We were not fine with it going to the jury on the qualified immunity. In fact, we made a Rule 50 motion before it went to the jury that there was no evidence and that the evidence was sufficient for the court to determine that the force was excessive and that there was no evidence to support a qualified immunity defense. There was an absolute lack of evidence. Let me ask you this. How do I get around Johnson? All right, Your Honor. Johnson is dead on. Johnson says, Judge Merguia writing, she says, and I read to you, if the answer to the first question is yes, which means there's violation of the constitutional law, then for the second step we call on a familiar character, the hypothetical reasonable officer. And she says our reasonable officer sometimes makes mistakes of fact or law and thereby commutes an unconstitutional act.  It sometimes proves necessary for a jury to determine first whether the mistake was in fact reasonable. Are you suggesting Johnson is out of line with our constitutional law? I'm suggesting that the facts in Johnson were completely separate from the facts in this case. There is no case that I'm aware of that says that when you're making an arrest that you can have qualified immunity for breaking a person's arm. And the uncontradicted testimony was that the arm was broken by a lifting and twisting movement. There was a biomechanic and an orthopedic. But this isn't a factual determination, Counselor. I understand, Your Honor. This is a legal determination. We've now found a factual determination of constitutional violation, and now we're determining if the law is such that the officer was under plain notice that he shouldn't have done what he did. All right. That's the second part of the test. I appreciate the question. I want to address it. The fact is that handcuffing too tight has been found to be not entitled to qualified immunity and excessive force. The fact there's no case that I'm aware of that bone-breaking force, we're not just talking about snapping a bone, we're talking about twisting it beyond its anatomical limit. But again, Counselor, you are making the argument that there is more force than was necessary, and you won that. We're now at a legal determination. Correct. If I follow your argument. Your argument is that the jury should have never had that question. The question of qualified immunity? That's your question. And I said, but Johnson says they should. Well, Johnson, first of all, the way that the question was given to the jury, we don't believe that it should have been given to the jury at all because the historical facts and almost all the cases, I believe all the cases, talk about when there's an issue of historical fact, you have to let the jury decide it. The issues of historical fact were decided here. The man's arm was broken. It was determined to be excessive. There was no evidence put on that there was some reasonable basis for the officer not to know that using bone-breaking force was too much when the man is laying on the ground, his arm is lifted and twisted. They didn't even address that. They denied that they broke the arm. They denied doing anything but putting the handcuffs to the back. So at that point when the jury found excessive force, the court should have stepped in and made the determination. We made a Rule 50 motion both before it went to the jury and afterwards. So what law do I use to say what the court did in this instance is wrong? Well, we have the law of qualified immunity. We have the Diorle case. We have Saussure. I mean, we've got right on point a law, a case, Johnson v. Bay Area Rampant Transit, which did the same thing that was done in this case. We're not talking about the Taser case, are we, where the officer claimed he picked up a gun. No, we're talking about unreasonable force. This is Johnson. The personal representative for the straight-of-the-train passenger was shot while arrested by the police. Yes, that's the case. That's one where the officer said, I didn't know the difference between my firearm and my Taser, and somehow he got a pass on that. That's not a case where I'm twisting the arm and I'm raising the arm, but I only said that I put it behind his back. They denied doing the act which led to the excessive force. So they didn't provide evidence that could support a qualified immunity. Where is the hazy border? This is such a clear-cut, I mean, literally it's a clear-cut break of the man's arm, and they don't supply any justification. They don't supply any explanation. They don't provide anything for a jury to decide because the historical facts have been resolved. Counselor, I'm going to ask you one more time, and I want you to think very carefully about your response. Instruction number 32 is the jury instruction given to the jury on qualified immunity and is the only reason the jury was allowed to answer the question you think is a violation of the law. Are you suggesting that asking a jury any question as it relates to qualified immunity is a constitutional violation? We're talking the second prong. I get it. I'm not going to go to that distance because if there are factual issues that need to be resolved with regard to qualified immunity. What factual issues would need to be resolved when the law is, does the officer on notice of Supreme Court precedent or circuit court precedent, which forbids him from doing this? When the precedent is there and it forbids him from acting, I do not know. I'm trying to figure out what the question could be for a jury to decide, and I thought that was your argument. That is my argument. Maybe I was not doing my best, but in any event. All right, let me see if Judge, did that answer your question? Yeah. All right. Well, I'm not sure because he's still hedging. You're four minutes over time. Can I have five seconds to add something? No. All right. I'm going to give each side three minutes for rebuttal. Thank you. I'll just address the qualified immunity issue. So what was, Johnson says that it sometimes proves necessary for a jury to determine first whether the mistake was in fact reasonable. Presumably that is because in some cases there's a factual issue still to be resolved. What was the factual issue still to be resolved once the jury had determined that there was excessive force? They had to decide whether this officer could have made a mistaken judgment call that was reasonable as to the amount of force used, and they would do that on the basis of these same disputed historical facts that they had resolved under instruction that the constitutional violation had occurred. Then the facts are so intertwined, it's the same evidence. Under those circumstances, could a reasonable officer believe that the amount of force he was applying was legal? The judge? I've really enjoyed your answers because I think they have been straight to the point and they've gotten us where we got to today. But I'd like you to find me a case outside of Johnson which dealt with excessive force again where after determining there's a constitutional violation, one asks the jury to determine if it's reasonable to violate the Constitution. That's what you really ask the jury. Not quite. Well, you said... Actually, you asked them if it would reasonably, you could reasonably but mistakenly believe you were okay in acting within the law. In what other context do we suggest that an officer could be mistaken as to the law and therefore get out of a constitutional violation? In every other case, we say the law is this, it's absolutely clear, you're on notice, and if you violate it, done. Well, the Supreme Court has now said that the mistake can be a mistake of law because the law is out there. For instance... A mistake of law is a matter for the court, not for the jury. Correct. But there can also be mistakes of fact. So what was the fact, the mistake of fact? Your adversary says in Johnson there was a potential mistake of fact of thinking one weapon was another. What was the mistake of fact here that was presented to the jury? That the amount of force he was applying, they didn't know, they weren't intending to break an arm, they didn't know it was broken until after the fact. So the mistake of fact was as to the amount of force he used to get Figueroa's arm out from under him and behind his back in order to cuff him. It's not a situation, for instance, like in... Was Figueroa fighting? It appears that the jury... Here's the problem. The qualified immunity turns on whose version of events you believe. It just does in this case. And the district court said she couldn't draw the line clear enough, so she was going to let the jury have a chance, and if she thought they'd gotten off course, she'd correct it in a post-trial motion. The same facts that would prevent summary judgment on the excessive force, the same disputed facts, would prevent the court from deciding qualified immunity because the facts were so tied up in the decision of the amount of force. Torres, this is not an excessive force case, but the Torres case cited in the brief was an arrest case. And what happened there was four deputies were given qualified immunity in a 50A motion, and the Ninth Circuit found that it was improper as to to and remanded for jury determination and go ahead with the rest of the trial or whatever, because the same facts that precluded summary judgment as to the arrest would determine whether a reasonable belief could be possible under the circumstances. My worry is that the court and counsel, maybe if they agree to these, mixed up reasonable with what it was the jury was to determine, because it seems to me if what the policeman did was reasonable, it's not excessive. His belief was reasonable. If it's reasonable under the circumstances of what's going on there in his head, in what was happening, in what was doing, then it isn't excessive. I'm having a tough time understanding how that has anything to do with whether the law as it is at the time it was done is different. The law's got to be applicable to every policeman the same. If it's the law and he breaks it, even if he doesn't know about it, I'm having a tough time understanding how he gets out. Or we'd have everybody come in on a qualified immunity case, and we'd say, well, I didn't know about it. Your Honor, it's not alone in finding qualified immunity a difficult issue. I believe the Second Circuit has characterized it as that, because exactly reasonable, reasonable. Doesn't the second prong have the additional factor of the reasonable officer, what's in the reasonable officer's head, whereas the first prong, you've got to determine the factual disputes, and they can also factor in that the arm was broken, which the officer doesn't know at the time that they could believe. The officer didn't know he was breaking his arm or that that amount of force would break his arm, but it did in fact. So they say, yeah, it turned out to be excessive, but when you were cuffing him, you didn't know that. Right. The second, the law clearly established second part of the analysis includes would a reasonable officer believe that what he was doing was within the law. The first part is, was it reasonably objective? Yes, no, excessive force or not excessive force, that. Then the second part is, would an officer in his position reasonably believe, but mistakenly believe, because the mistake has been found. It was excessive force. Okay. But is that an objective or a subjective determination? It's still objective because it's would you believe under those same disputed facts that you were. If it's objective, it sounds more like a question of law than a jury question. Because the facts of what he did were at that point determined by the initial verdict. It's only if there were a defense that, well, could a reasonable officer in his mind mistakenly believe he was not using excessive force. If that were a defense, then I could see a jury question, but that's not the situation here. And it's not what you say. I think it was the situation here, Your Honor. I thought you just told me it was an objective determination, not a subjective. Well, it's not what was in Perez's mind necessarily, but could someone in his position, would he reasonably believe that he was okay within the law? I think the procedure hasn't been spelled out in the Supreme Court, certainly. They handle mostly summary judgment cases. What's really clear is that if there's no dispute about the historical facts and there's just a dispute about what inferences you could draw from them, then the district court decides it. But if the problem arises when the same facts will answer both questions, and the judge here decided to send it all to the jury and see what happened, if something goes wrong and she just could not agree and she looked at the record and there was no substantial evidence to support that anybody could have made a mistake under these circumstances, then she would turn it around, but she didn't find any problem. And so we ask that the judgment in favor of Perez be left in place, but the default judgment. Okay, thank you for your argument. Thank you. All right, you have three minutes, so whoever wants to take the three minutes. And if we have questions, it will go over. Thank you. Counsel said that she believes that this was when they extracted his arm from under his body. The evidence clearly showed that wasn't the case. There was expert testimony that was uncontradicted on that. In any event, the question here is, should the legal question have been submitted to the jury? There's a second point that I wanted to make is that the way that it was submitted to the jury didn't acknowledge that this was an objective standard, and it asked in the question number six, quote, did that defendant prove that at the time he arrested plaintiff, it was reasonable for that defendant to believe that the force he used in arresting plaintiff was not excessive. So there's no reference to an objectively reasonable officer. It's really asking the jury to put themselves in Perez's mind and make a determination. In any event, that wasn't proper to submit to the jury in the first instance, and the way it was submitted was not proper. It's our position, and we did not agree to that instruction. We objected to it, and the record reflects that. We felt, and consistently so, that this was a decision for the court. There were no facts left to decide once the jury had decided excessive force. There were no facts put in the record by defendants. As I said before, this was an all-or-nothing proposition. They lost on excessive force as to Perez. That should have been the end of it because there was no evidence to support objectively reasonable belief. They denied doing it. They denied the acts that would have caused it. So are you saying even if the court had made that determination, you're saying that just because they find excessive force, ergo the second prong, that there would be no inquiry that the court would have to make different? In general, I would. I mean, one doesn't equal the other. I know. And whether it's the court or the jury. I agree. But in this case, generally I don't want to go generally because there are facts that could be different, obviously. But in this case, once the resolution of the excessive force, and this was grotesque excessive force, was made, there was nothing left to decide. How could an officer objectively reasonably believe that he had to twist the arm past the breaking point? Well, the court could have set that aside, right, and didn't. The court looked at it and said, didn't do that, right? So you essentially got both a jury consideration and a court consideration. You got them both. And you lost both times there. Well, Your Honor, sometimes that's why we're here. That's why there is a higher court, we believe. And I think that, frankly, the district courts have some trouble with where the line is on what they're supposed to do, what they keep to themselves, what they give to the jury. But we believe that the law is clear enough, especially in such an egregious case, that this could not be reasonable. No reasonable officer could believe it was reasonable. And the choice they made was to put on evidence that just simply denied it. They lost. They didn't explain, oh, well, I had to twist his arm because X, Y, Z. They didn't do that. There was no evidence to support a jury determination because there were no facts left to be determined. And the instruction given to the jury didn't properly advise them of objective reasonableness. And we believe and we contend that it never should have been because it was a legal question. I hope there's some time left for Mr. Oboge. There isn't. All right. Unless either of my colleagues have any questions. No, you've gone over the time. But thank you both for your helpful argument in this matter. We'll stand submitted.
judges: Callahan, N.R. Smith, Rakoff